Brent R. Kunz
Kevin D. Bohnenblust
HATHAWAY & KUNZ, P.C.
P. O. Box 1208
Cheyenne, WY 82003-1208
Telephone:     307-634-7723
Facsimile:      307-634-0985

ATTORNEYS FOR BLACK DIAMOND
ENERGY, INC., PLAINTIFF

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR 3 0 2007

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | |
|---|---|
| BLACK DIAMOND ENERGY, INC. )<br>)<br>Plaintiff/Appellant, )<br>)<br>vs. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>THE INTERIOR, )<br>)<br>Defendant/Appellee. ) | Civil Action No. 07-CV-90-B |

### PETITION FOR REVIEW

Pursuant to 43 C.F.R. § 3165.4(f), notice is hereby given that Black Diamond Energy, Inc., the Plaintiff/Appellant in the captioned case, hereby Petitions the United States District Court for the District of Wyoming for review of the Decision entered in this action on the 21st day of February, 2007, by the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals. Attached hereto and incorporated herein by reference as Exhibit A is a copy of the referenced Decision.

1758

DATED this **30the** day of April, 2007.

BLACK DIAMOND ENERGY, INC.,
Plaintiff/Appellant

By: *[signature]*

Brent R. Kunz
Kevin D. Bohnenblust
HATHAWAY & KUNZ, P.C.
P. O. Box 1208
Cheyenne, WY 82003
Telephone:   307-634-7723
Facsimile:   307-634-0985

ATTORNEYS FOR BLACK DIAMOND
ENERGY, INC., PLAINTIFF/APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that on the 30th day of April, 2007, a true and correct copy of the foregoing was placed in the U.S. Mail, postage prepaid and addressed to:

| | | |
|---|---|---|
| Office of Hearings and Appeals<br>Interior Board of Land Appeals<br>United States Department of the Interior<br>801 North Quincy Street, Suite 300<br>Arlington, VA 22203 | [ x ]<br>[ ]<br>[ ]<br>[ ] | U.S. Certified Mail<br>  Return Receipt Requested<br>Fed Ex<br>Fax<br>Hand Delivered |
| Associate Solicitor<br>Division of Energy and Resources<br>Washington, DC 20240 | [ x ]<br>[ ]<br>[ ]<br>[ ] | U.S. Certified Mail<br>  Return Receipt Requested<br>Fed Ex<br>Fax<br>Hand Delivered |
| Arthur R. Kleven, Esq.<br>Office of the Regional Solicitor<br>U.S. Department of the Interior<br>755 Parfet, Suite 151<br>Lakewood, CO 80215 | [ x ]<br>[ ]<br>[ ]<br>[ ] | U.S. Certified Mail<br>  Return Receipt Requested<br>Fed Ex<br>Fax<br>Hand Delivered |

Matthew H. Mead, Esq.            [ x ] U.S. Certified Mail
United States Attorney                   Return Receipt Requested
P. O. Box 668                    [   ] Fed Ex
Cheyenne, WY 82003-0668          [   ] Fax
                                 [   ] Hand Delivered

*Diana M. Gorman* (signature)

KDB/dmg

# EXHIBIT "A"

RECEIVED
FEB 2 6 2007
HATHAWAY & KUNZ, PC



United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS **CERTIFIED**
Interior Board of Land Appeals
801 N. Quincy St. Suite 300
Arlington, VA  22203



703 235 3750                                      703 235 8349 (fax)

February 21, 2007

| | | |
|---|---|---|
| IBLA 2007-53 through 2007-58 | : | WYW-144542, et al. |
| | : | |
| BLACK DIAMOND ENERGY, INC. | : | Oil & Gas Lease Reinstatement |
| | : | |
| | : | Decisions Affirmed; |
| | : | Petitions for Stay Denied as Moot |

### ORDER

Black Diamond Energy, Inc. has appealed from and petitioned for a stay of the effect of six separate decisions of the Wyoming State Office, Bureau of Land Management (BLM), dated November 13, or 17, 2006, denying its petitions for Class I and Class II reinstatement of six competitive oil and gas leases. [1]

By order dated January 9, 2007, we granted BLM's motion to consolidate the appeals, and, thereafter, BLM filed a response opposing any stay of its decisions. Based on our review, we affirm BLM's denial of the petitions, and deny the petitions for stay as moot.

BLM issued lease WYW-144542, effective April 1, 1998, and the other five leases, effective February 1, 1999, for a primary term of 10 years and so long thereafter as oil or gas was produced in paying quantities, pursuant to section 17 of the Mineral Leasing Act, as amended, 30 U.S.C. § 226 (2000). Each of the leases was issued subject to the requirement to pay, in advance of each lease year, an annual rental at the rate of $1.50 per acre or fraction thereof, for the first 5 years of the lease term, and $2.00 per acre or fraction thereof thereafter. The lease further stated that "[f]ailure to pay annual rental, if due, on or before the anniversary date of this

---

[1] The six leases at issue are the WYW-144542, WYW-147344, WYW-147397, and WYW-147399 through WYW-147401. They covered a total of 8,095.38 acres of public land in Ts. 44 and 45 N., R. 77 W., and T. 52 N., R. 79 W., Sixth Principal Meridian, Johnson County, Wyoming. BLM's decision concerning lease WYW-144542 was issued on Nov. 13, 2006, and the remaining decisions addressing the other leases were issued on Nov. 17, 2006. The Board docketed the six appeals as IBLA 2007-53 through IBLA 2007-58, corresponding to the sequential order of the leases.

lease * * * shall automatically terminate this lease by operation of law." All or part of the record title interest in each of the leases was later assigned to appellant.

By notice dated March 21, 2001, BLM granted appellant's request for suspension of operations and production on three of the leases, effective January 1, 2001, because BLM was unable to process applications for permits to drill (APD) coalbed methane (CBM) wells, during preparation of the Powder River Basin Environmental Impact Statement (EIS), pursuant to section 102(2)(C) of the National Environmental Policy Act of 1969 (NEPA), as amended, 42 U.S.C. § 4332(2)(C) (2000). On March 8, 2002, BLM granted suspension of operations and production on the other three leases, effective January 1, 2002, on the same basis.

Following preparation of the EIS, BLM issued a Record of Decision on April 30, 2003, inter alia, authorizing the approval of APDs for CBM wells in the Powder River Basin. See Memorandum to Wyoming State Director, BLM, from Field Manager, Buffalo Field Office, Wyoming, BLM, dated Apr. 7, 2005. Thereafter, by decisions issued in November 2005, BLM lifted the suspension of each lease in question, effective May 1, 2005. Each decision adjusted the lease expiration date for the lease or leases, specified the rental obligations by lease year, provided that any rental payments previously made to the Minerals Management Service (MMS) would be credited accordingly, and required that any additional payments necessary to meet the total rental amount set forth should be paid to MMS within 30 days of receipt of the decision.

The record, as supplemented by BLM on appeal, contains a certified mail return receipt card for each of the November 2005 decisions, establishing that BLM sent the decision, by certified mail, to appellant's record address, and that appellant received the decisions, in all cases, on November 14, 2005.

On August 14, or 16, 2006, BLM issued notices of termination for each of the leases, stating that, effective on the 2006 anniversary date of the lease, the lease had automatically terminated by operation of law for failure of the lessee to pay annual rental on or before that date. [2]/ See 30 U.S.C. § 188(b) (2000); 43 CFR 3108.2-1(a).

---

[2]/ BLM's Aug. 14, 2006, notice pertained to lease WYW-144542, and notices issued on Aug. 16, 2006, addressed the remaining leases. Each notice set forth the applicable lease anniversary date, Apr. 1, 2006, for lease WYW-144542, and Feb. 1, 2006, for the remaining leases. We are not concerned here with whether appellant satisfied the requirement to pay any of the pro-rated annual rental addressed in the November 2005 decisions. The Board has held that the automatic termination provision does not apply in a situation where rental charges became due
(continued...)

IBLA 2007-53 through 2007-58

The notice informed appellant that it might qualify for reinstatement of the lease under Class I and/or Class II reinstatement provisions, setting forth the requirements for seeking either or both forms of reinstatement. [3/] E.g., Notice (WYW-144542), dated Aug. 14, 2006, at 1. BLM required appellant to file any petition for reinstatement within 60 days of receipt of the notice, in accordance with 43 CFR 3108.2-2(a)(3) and 3108.2-3(b)(1)(i).

Appellant did not challenge the notices of termination. Instead, it timely filed two virtually identical petitions for reinstatement for each of the six leases, the only distinction being that one sought Class I reinstatement, the other Class II.

In each of those petitions, appellant argued that it had no record in its files of having received BLM's notification that the suspension of operations and production had been lifted for the lease in question, indicating that it had therefore not received official notice of resumption of the requirement to pay annual rentals. E.g., Class I Petition (WYW-144542), dated Oct. 13, 2006. Nevertheless, it acknowledged that "[i]n 2005 an email that was sent from the Wyoming Petroleum Association listed various lease[s] removed from suspension status as of May 1[,] 2005," and that "[t]he list indicated that [the] subject lease was being removed from suspension." Id. It added that "[w]hen the 2006 rents were being scheduled[,] the May 1 date * * * was entered for scheduled review as we had not received any other information that would indicate that the status of this lease was changed or that additional delay rental sums were necessary." Id. Appellant did not assert that it had paid the

---

[2/] (...continued)
based on the termination of a suspension of an oil and gas lease. Andrew HeLal, 122 IBLA 325, 327 (1992). Automatic termination arises only when, as in this case, there is a failure to pay annual rental on or before the lease anniversary date. Id. at 327-28.

[3/] Under 30 U.S.C. § 188(c) (2000), the Secretary is authorized to reinstate a lease only if the full amount of the rental due is paid or tendered within 20 days after the due date and the lessee establishes that the failure to timely pay was either justifiable or not the result of the lessee's lack of reasonable diligence. Reinstatement under this provision is known as a Class I reinstatement. 43 CFR 3108.2-2. When rental is not paid within 20 days of the termination date, the Secretary may reinstate an oil and gas lease, under the provisions of 30 U.S.C. §§ 188(d) and (e) (2000), as amended, provided the lessee shows to the satisfaction of the Secretary that the failure to pay timely was justified or not due to lack of reasonable diligence on the part of the lessee, or, no matter when the rental is paid after termination, it is shown to the satisfaction of the Secretary that such failure was inadvertent. This type of reinstatement is known as Class II. 43 CFR 3108.2-3.

3

IBLA 2007-53 through 2007-58

required rentals for the 2006 lease year; nor did it include any payment with its petitions.

BLM denied appellant's Class I and Class II petitions for reinstatement, and appellant filed the subject appeals.

Appellant does not directly challenge BLM's rejection of the petitions, except to assert that each of the leases did not terminate on the lease anniversary date due to lack of notice that the lease "had come out of suspension." E.g., Petition for Stay (IBLA 2007-53) at 2. Since appellant did not file any notice of appeal following receipt of the notices of termination within the time established in 43 CFR 4.411(a), the question of whether the leases terminated by operation of law is administratively final for the Department, absent compelling legal or equitable reasons for further review, and cannot be considered in the appeal of a denial of reinstatement. PRM Exploration Co., 90 IBLA 63, 67, 92 I.D. 617, 619 (1985). Appellant has not offered any compelling legal or equitable reasons for further review of the issue of termination. Its claim that it did not receive any notice of the lifting of the suspensions is refuted by the record.

To the extent appellant's arguments on appeal may be construed as arguments in favor of reinstatement of the leases, they must be rejected. BLM properly denied reinstatement.

The first condition a lessee must satisfy in order for its lease to be considered for Class I reinstatement is that the lease rental must have been paid or tendered within 20 days after the lease anniversary date, the anniversary date for lease WYW-144542 being April 1, 2006, and for the other five leases, February 1, 2006. The record, as supplemented, shows no payment on, before, or after the 2006 anniversary date for leases WYW-144542, WYW-147344, and WYW-147399. [4] For

---

[4] On Jan. 26, 2007, BLM provided the Board with two sets of MMS lease rental documents. One set consists of two single-page Lease Account Balance ("LAB") documents for each of the six leases, plainly taken from an online database, which BLM terms "MMS Transaction Pages." (FAX Cover Sheet from Sue Moberley, BLM Land Law Examiner, dated Jan. 26, 2007.) The other set consists of two multi-page MMS reports entitled "EXPIRED AND TERMINATED LEASES BY LEASE TYPE," one labeled by BLM the "February 2006 MMS Report," with a run date of Mar. 28, 2006, and the other labeled by BLM the "April 2006 MMS Report," with a run date of May 30, 2006. Each report, inter alia, lists BLM leases by "LEASE NUMBER," a "PAID AMOUNT," whether $0.00 or a specific dollar amount, a "PAID DATE," if applicable, and the "RENT AMOUNT[.]" None of these documents shows any payment for the
(continued...)

4

the other three leases, we find no record of the payment of any annual rental for the 2006 lease year on or before the lease anniversary date, but note that rental payments were received on February 21, 2006, for all three of those leases. [5] However, in each instance, the amount paid was considerably less than the required annual rental for the lease. [6] Failure to pay the full amount of the required rental for the 2006 lease year within 20 days of the lease anniversary dates precluded reinstatement under Class I. See William F. Corkran, 114 IBLA 76, 80-81 (1990); Howard E. Kurtz, Jr., 59 IBLA 387, 388 (1981).

The required back rental for Class II reinstatement of a competitive oil and gas lease must be paid at a rate of $10.00 per acre or fraction thereof. See William F. Corkran, 114 IBLA at 80. For a lease terminating after August 8, 2005, for failure to pay annual rental, such rental must be paid on or before the earlier of 60 days after receipt of a notice of termination or 24 months after the termination of the lease. [7] Appellant's failure to pay back rental at the increased rental rate within 60 days after its receipt of BLM's August 2006 notices of lease termination prohibited Class II reinstatement of the leases. See id. at 81.

---

[4] (...continued)
three leases for 2006. See February 2006 MMS Report at "Page 5"; April 2006 MMS Report at "Page 3."

[5] MMS received payments of $1,093, $573, and $1,240.40 on Feb. 21, 2006, for leases WYW-147397, WYW-147400, and WYW-147401. See February 2006 MMS Report at "Page 5"; April 2006 MMS Report at "Page 3"; LAB Detail Information (WYW-147397) for 2/1/06 LAB Date; LAB Detail Information (WYW-147400) for 2/1/06 LAB Date; LAB Detail Information (WYW-147401) for 2/1/06 LAB Date.

[6] The rental for each of those leases, computed at the regular rate of $1.50 per acre or fraction thereof, was $3,279 (WYW-147397), $1,719 (WYW-147400), and $3,721.50 (WYW-147401).

[7] Section 371(b) of the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 734, recently amended 30 U.S.C. § 188(d) (2000) to require, for leases that terminate after Aug. 8, 2005, submission of a Class II petition (together with applicable back rental and royalty accruing after the date of termination) on or before "the earlier of" 60 days after the receipt of notice of lease termination or 24 months after termination of the lease for failure to pay annual rent timely. 30 U.S.C.A. § 188(d)(2)(B) (West Supp. 2006). Since the leases at issue terminated on Feb. 1, and Apr. 1, 2006, the 60-day periods following receipt of BLM's August 2006 notices ended well before the expiration of the 24-month periods following termination.

5

IBLA 2007-53 through 2007-58

Although BLM's decisions addressed appellant's failure to meet other conditions for Class I and Class II reinstatement, we find it unnecessary to do so because of appellant's failure to pay rental, as discussed above.

Accordingly, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 CFR 4.1, the decisions appealed from are affirmed. Appellant's petitions for stay are denied as moot.

/s/ Bruce R. Harris
Bruce R. Harris
Deputy Chief Administrative Judge

I concur:

/s/ H. Barry Holt
H. Barry Holt
Chief Administrative Judge

APPEARANCES:

| | |
|---|---|
| Brent R. Kunz, Esq.<br>Kevin D. Bohnenblust, Esq.<br>Hathaway & Kunz, P.C.<br>2515 Warren Avenue, Suite 500<br>P.O. Box 1208<br>Cheyenne, WY 82003-1208 | **FAX: 307-634-0985** |
| Arthur R. Kleven, Esq.<br>Office of the Regional Solicitor<br>U.S. Department of the Interior<br>755 Parfet Street, Suite 151<br>Lakewood, CO 80215 | **FAX: 303-231-5363** |

6